**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MOHAMMED R. AYYAD, | Case No.: 1:26-cv-1648 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | **(JURY TRIAL DEMANDED)** |
| PACIFIC BELLS, LLC, a Washington Limited Liability Company, JOHN DOE CORPORATIONS 1-5, | |
| Defendants. | |

COMES NOW Plaintiff, Mohammed R. Ayyad, by and through his attorneys of record, and for his causes of action against Defendants Pacific Bells, LLC and John Doe Corporations 1-5, complains, alleges, and states as follows:

## I.     PARTIES

1.     Plaintiff Mohammed R. Ayyad is now, and was at all times material to this Complaint, an adult resident and citizen of North Olmsted, Cuyahoga County, Ohio.

2.     Defendant Pacific Bells, LLC (hereinafter "Pacific Bells") is, and was at all times material to this Complaint, a limited liability company organized and existing under the laws of the State of Washington, with its principal place of business in the State of Washington. On information and belief, no member of Pacific Bells is a citizen of the State of Ohio. At all times material to this Complaint, Pacific Bells owned and operated the Taco Bell restaurant located at

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL -- 1

MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840
bmarler@marlerclark.com

24247 Lorain Road, North Olmsted, OH 44070 (the "Subject Restaurant"), where it manufactured, prepared, and sold the food products described herein.

3. Defendants John Doe Corporations 1-5, whose identities are currently unknown, are the manufacturers, distributors, importers, packagers, brokers, suppliers, and/or growers of the food products and/or their constituent ingredients that caused Plaintiff's illness, as well as the illnesses of other individuals sickened as a result of the subject outbreak. These Defendants are in some manner responsible for the acts, occurrences, and transactions set forth herein and/or are the partners and/or alter ego(s) of the Defendants named herein, and are therefore legally liable to Plaintiff. Plaintiff will set forth the true names and capacities of the fictitiously named Doe Defendants, together with appropriate specific charging allegations, when ascertained.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Plaintiff is a citizen of Ohio. Pacific Bells is a limited liability company; for purposes of diversity jurisdiction, it is a citizen of each state of which its members are citizens, and, on information and belief, no member of Pacific Bells is, or was at any time material to this Complaint, a citizen of Ohio. On information and belief, none of the John Doe Corporations 1-5 is a citizen of Ohio. Complete diversity of citizenship therefore exists between Plaintiff and all Defendants.

5. This Court has personal jurisdiction over Defendants because Defendants transacted business within the State of Ohio, including the manufacture, preparation, and sale of food products to consumers in this State, and committed the tortious acts giving rise to this action within the State of Ohio, specifically within Cuyahoga County.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL -- 2

**MARLER CLARK**
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840
bmarler@marlerclark.com

6.    Venue is proper in the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including the manufacture, preparation, and sale of the contaminated food products that Plaintiff consumed, and Plaintiff's resulting injuries.

### III.    FACTUAL ALLEGATIONS

### The 2026 Multistate Cyclosporiasis Outbreak

7.    On July 14, 2026, the Centers for Disease Control and Prevention ("CDC") issued a Health Alert Network Health Advisory (CDCHAN-00531) notifying clinicians, public health practitioners, and laboratorians of domestically acquired cyclosporiasis cases in multiple U.S. states. According to the CDC, since May 1, 2026, it had received reports of 1,645 confirmed domestic cases of cyclosporiasis and was aware of more than 5,100 additional cases requiring further analysis to confirm as domestically acquired — nearly 7,000 people nationwide. This total is substantially higher than the 249 cases reported nationally during the same period in 2025.

8.    According to the CDC, the 1,645 lab-confirmed cases were reported by 34 states. The affected case-patients ranged in age from 2 to 95 years, with a median age of 44 years. Of the case-patients with available information, 141 (9%) were hospitalized. The CDC has recognized that, because cyclosporiasis is often underdiagnosed and underreported, the true number of illnesses is likely higher than the number reported.

9.    Also on July 14, 2026, the CDC posted an outbreak investigation notice reporting that, as of July 13, 2026, more than 400 people infected with *Cyclospora* had been reported to the CDC from four states — Michigan, Ohio, West Virginia, and Kentucky — in connection with a single multistate outbreak that appears to be epidemiologically linked, suggesting a common

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL -- 3

MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840
bmarler@marlerclark.com

source of infection. Sick people in that outbreak reported the onset of symptoms on or after June 22, 2026.

10.     The CDC, the U.S. Food and Drug Administration ("FDA"), and state and local health departments have been working together to investigate the multistate outbreak and to identify the source of illness. Previous cyclosporiasis outbreaks have repeatedly been linked to the consumption of contaminated fresh produce, including leafy greens and fresh herbs. Public health officials in Michigan have identified salad greens as a likely source of the multistate outbreak.

11.     In early July 2026, Taco Bell restaurants in Michigan and elsewhere posted signs at their counters informing customers that the chain could no longer serve lettuce, cilantro, onions, pico de gallo, or guacamole. Thereafter, as reported in the national press, federal and state health officials confirmed that they were investigating whether food products served at Taco Bell restaurants played a role in the multistate cyclosporiasis outbreak. The ingredients withdrawn by Taco Bell — lettuce, cilantro, onions, and the fresh produce used in its pico de gallo and guacamole — are among the fresh produce items historically implicated in *Cyclospora* outbreaks.

### Cyclosporiasis and Cyclospora Infection

12.     Cyclosporiasis is a gastrointestinal illness caused by the microscopic parasite *Cyclospora cayetanensis*. People become infected by consuming food or water contaminated with the parasite. The illness is not usually spread directly from person to person. Case counts typically rise during the spring and summer months, and the CDC considers May 1 through August 31 to be the annual cyclosporiasis season. Previous outbreaks have been linked to consuming contaminated fresh produce.

13.     Symptoms of cyclosporiasis typically begin about one week after exposure, with onset ranging from 2 to 14 days after being exposed. The most common symptoms include fre-

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL -- 4

MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840
bmarler@marlerclark.com

quent, watery diarrhea, along with loss of appetite, weight loss, bloating, nausea, and fatigue. Less common symptoms include low-grade fever and vomiting. Without treatment, symptoms can follow a remitting-relapsing course that can last from a few days to a month or longer.

14.    Laboratory detection of *Cyclospora* in stool can be challenging even in symptomatic patients, and standard ova-and-parasite examinations may not detect it reliably; specific diagnostic testing for *Cyclospora* must be requested. The recommended treatment for confirmed cyclosporiasis is a 7-to-10-day course of trimethoprim-sulfamethoxazole (TMP-SMX), sold under the brand name Bactrim. Illness can be severe, and complications can include malabsorption, cholecystitis, and reactive arthritis.

15.    Cyclosporiasis is entirely preventable through proper food-safety practices. Because *Cyclospora* contamination originates in the field and water before produce reaches the point of sale, and because chemical disinfection or ordinary washing may not fully eliminate the parasite, the burden of preventing cyclosporiasis rests on those who grow, handle, distribute, and sell fresh produce and the foods made from it.

**Plaintiff's Injuries**

16.    On June 14, 2026, Plaintiff twice ate meals at the Taco Bell restaurant located at 24247 Lorain Road, North Olmsted, Ohio. Plaintiff's meals consisted of items he regularly ordered at the Subject Restaurant, including, in sum, five orders of Cheesy Fiesta Potatoes, and four Avocado Ranch Chicken Stackers.

17.    On June 21, 2026, Plaintiff again ate a meal prepared and sold by the Taco Bell restaurant located at 24247 Lorain Road, North Olmsted, Ohio, consisting of three Cheesy Fiesta Potatoes and three Avocado Ranch Chicken Stackers.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL -- 5

MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840
bmarler@marlerclark.com

18.     On or about June 23, 2026 — a period consistent with the incubation period for cyclosporiasis — Plaintiff began experiencing symptoms of a Cyclospora infection. Within a period of one to two hours, Plaintiff developed a severe headache and chills. Plaintiff was forced to lie down and was unable to function normally.

19.     Plaintiff's symptoms continued and worsened over the following days. He suffered continued headache, chills, weakness, and an inability to sleep through the night. Plaintiff began vomiting on June 24, 2026, and developed persistent diarrhea. On June 27, 2026, Plaintiff passed his first solid stool in days, only for his diarrhea to return and again worsen. Plaintiff remained ill through at least July 2, 2026, and continued to struggle to tolerate food thereafter.

20.     On July 3, 2026, Plaintiff sought medical care at the Cleveland Clinic urgent care facility in North Olmsted, Ohio. Plaintiff was advised to take Imodium and was not prescribed antibiotics at that time.

21.     On July 6, 2026, Plaintiff provided a stool sample for testing. On July 9, 2026, that sample tested positive for Cyclospora, confirming that Plaintiff had contracted cyclosporiasis.

22.     Following his diagnosis, Plaintiff was prescribed and began a course of Bactrim and, as of the filing of this Complaint, remains on antibiotic treatment. Plaintiff continues to experience constant nausea, which spikes each time he takes his medication, as well as a persistent, ongoing headache.

23.     As a direct and proximate result of his Cyclospora infection, Plaintiff missed approximately two weeks of work and suffered lost income, in addition to his physical illness, pain, suffering, and other injuries. Plaintiff's recovery is ongoing.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL -- 6

MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840
bmarler@marlerclark.com

## IV.  CAUSES OF ACTION

### COUNT I

**Strict Product Liability (Ohio Product Liability Act, ORC § 2307.71, et seq.)**

24. By this reference, Plaintiff incorporates the foregoing paragraphs as if each were set forth here in its entirety.

25. At all times relevant to this action and the allegations in this Complaint, Defendants were manufacturers and/or suppliers within the meaning of the Ohio Product Liability Act, ORC § 2307.71, *et seq.*

26. Defendants manufactured, supplied, and sold the food product contaminated with *Cyclospora* that caused Plaintiff's illness and injuries.

27. The Cyclospora-contaminated food product that caused Plaintiff's injuries was a "product" within the meaning of ORC § 2307.71(A)(12)(a).

28. The food product that caused Plaintiff's injuries was, at the time it left Defendants' control, defective within the meaning of ORC § 2307.73(A)(1). More specifically, the food product was unreasonably dangerous for its ordinary and expected use because it was contaminated with *Cyclospora cayetanensis*, a pathogenic parasite.

29. The food product was sold to Plaintiff without any change in its defective condition, and the food product was used in the manner expected and intended, i.e., human consumption.

30. Plaintiff's injuries occurred as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that was manufactured, supplied, and sold by Defendants.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL -- 7

MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840
bmarler@marlerclark.com

## COUNT II
### Ohio Consumer Sales Practices Act, ORC § 1345.01, et seq.

31.     By this reference, Plaintiff incorporates the foregoing paragraphs as if each were set forth here in its entirety.

32.     Defendants are "suppliers" as that term is defined in ORC § 1345.01(C).

33.     Plaintiff is a "consumer" as that term is defined in ORC § 1345.01(D).

34.     Defendants' acts and practices, as described above, were unfair or deceptive acts or practices in connection with a consumer transaction, in violation of ORC § 1345.02, in that Defendants, among other things, represented that the food that they manufactured, prepared, and sold, and that caused Plaintiff's *Cyclospora* infection and related injuries:

    a.     had performance characteristics, uses, or benefits that it did not have;

    b.     was of a particular standard or quality that it was not; and

    c.     had been supplied in accordance with a previous representation when it had not.

35.     As a direct and proximate result of Defendants' violations of the Ohio Consumer Sales Practices Act, ORC § 1345.01, *et seq.*, Plaintiff is entitled to damages as set forth in ORC § 1345.09, trebled, including actual damages and economic damages.

## COUNT III
### Breach of Warranty (Uniform Commercial Code, ORC § 1302.01)

36.     By this reference, Plaintiff incorporates the foregoing paragraphs as if each were set forth here in its entirety.

37.     Defendants are "sellers" and "merchants" as those terms are defined in ORC § 1302.01(A)(4) and (5).

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL -- 8

**MARLER CLARK**
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840
bmarler@marlerclark.com

38.     Defendants made express and/or implied warranties about the food that they manufactured, prepared, and sold, and that caused Plaintiff's *Cyclospora* infection and related injuries, including, but not limited to, the following:

a.      affirmations of fact or promise which related to the goods and became part of the basis of the bargain;

b.      descriptions of the goods that became part of the basis of the bargain;

c.      that the food items were merchantable, as defined in ORC § 1302.27, in that they would pass without objection in the trade, were fit for the ordinary purpose for which they were sold, were adequately contained, packaged, and labeled, and conformed to promises or affirmations of fact on the container; and

d.      that the food items were fit for the particular purpose for which they were purchased, as defined in ORC § 1302.28, in that Defendants had reason to know that they would be consumed, and that Plaintiff would rely on Defendants' skill or judgment to furnish suitable goods.

39.     Defendants breached the express and/or implied warranties they made because they manufactured, prepared, and sold food items that caused Plaintiff's *Cyclospora* infection and related injuries.

40.     As a direct and proximate result of Defendants' breaches of express and/or implied warranties, Plaintiff is entitled to damages.

### V.     DAMAGES

41.     Plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of Defendants, in an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; past med-

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL -- 9

MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840
bmarler@marlerclark.com

ical and medical-related expenses; future medical and medical-related expenses; travel and travel-related expenses, both past and future; lost wages and lost earnings; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would, or could, be reasonably anticipated to arise under the circumstances.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

a.      For compensation for all general, special, incidental, and consequential damages suffered by Plaintiff as a result of Defendants' conduct;

b.      For statutory damages, including treble damages, under the Ohio Consumer Sales Practices Act;

c.      For statutory prejudgment interest;

d.      For reasonable attorneys' fees and costs, to the fullest extent allowed by law; and

e.      For all such additional and further relief as this Court deems just and equitable.

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL -- 10

MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840
bmarler@marlerclark.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 16th day of July, 2026.

By: /s/ Alexander Darr
    Alexander Darr (0087102)
    1391 W. 5th Ave., Ste. 313
    Columbus, Ohio 43212
    Telephone: (614) 465-3277
    Facsimile: (855) 225-3277
    Alex@Darr.Law

By: /s/ William D. Marler
    William D. Marler, WSBA #17233
        (*pro hac vice* motion forthcoming)
    MARLER CLARK, INC., PS
    180 Olympic Drive S.E.
    Bainbridge Island, WA 98110
    Telephone: (800) 884-9840
    Email: bmarler@marlerclark.com

*Attorneys for Plaintiff*

COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL -- 11

MARLER CLARK
THE FOOD SAFETY LAW FIRM
180 Olympic Drive S.E.
Bainbridge Island, WA 98110
(800) 884-9840
bmarler@marlerclark.com